IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DORA A. CASTRO,
DANIEL ADRIAN DURAN, and
JENNIFER DEMETRIA MONTAÑO,

           Plaintiffs,

v.                                             No. CIV 15-521 JAP/SCY

COUNTY OF BERNALILLO,
PATRICK RAEL, a Bernalillo County Sheriff's
Deputy, in his official and individual capacities,
DAN HOUSTON, in his official and individual
capacities as Bernalillo County Sheriff, and
DEPUTIES JOHNS DOE 1–5, unknown Bernalillo
County Sheriff's Deputies, in their official and
individual capacities,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

In DEFENDANTS' MOTION TO DISMISS COUNTS III, IV AND V OF

PLAINTIFF'S "COMPLAINT FOR VIOLATION OF CIVIL RIGHTS" AND FOR

QUALIFIED IMMUNITY AND MEMORANDUM IN SUPPORT THEREOF (Motion) (Doc.

No. 6), Defendants County of Bernalillo, Patrick Rael, and Dan Houston, ask the Court to

dismiss the following claims: 1) 42 U.S.C. § 1985 conspiracy claim against Deputy Rael, Sheriff

Houston, and Deputies Johns Doe (Count III); 2) 42 U.S.C. § 1983 civil right rights claim against

Sheriff Houston (Count IV); and 3) 42 U.S.C. § 1983 civil right rights claim against Sheriff

Houston and County of Bernalillo (Count V). Defendants' Motion does not challenge the Fourth

Amendment claims of unlawful search and seizure against Deputy Rael and Deputies Johns Doe

(Counts I and II).

1

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS III, IV, AND V OF PLAINTIFFS' COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND FOR QUALIFIED IMMUNITY (Doc. No. 7) (Response) argues that no defendant is entitled to qualified immunity and that all of the challenged claims survive Rule 12(b)(6) scrutiny. DEFENDANTS' REPLY MEMORANDUM FOR THEIR MOTION TO DISMISS COUNTS III, IV AND V OF PLAINTIFF'S "COMPLAINT FOR VIOLATION OF CIVIL RIGHTS" AND FOR QUALIFIED IMMUNITY  (Reply) (Doc. No. 9) continues to assert that Counts III, IV, and V of PLAINTIFFS' COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (Complaint) (Doc. No. 1-2) should be dismissed with prejudice.

## Background[1]

Plaintiff Dora A. Castro (Ms. Castro) is the mother of Plaintiff Daniel Adrian Duran (Daniel Duran). At the time of the pertinent incident, Plaintiff Jennifer Demetria Montaño (Ms. Montaño) was Daniel Duran's girlfriend. Jose Duran is not a Plaintiff in this case, but he is another son of Ms. Castro and a brother of Daniel Duran.

On about October 31, 2012, Deputy Rael prepared an affidavit in support of a search warrant pertaining to Jose Duran's residence at 10505 Secret Oasis Avenue SW in Albuquerque, New Mexico (Secret Oasis), and his vehicle, a red Dodge Magnum. Deputy Rael had probable cause to believe that Jose Duran was concealing heroin in his Secret Oasis residence and/or in the Dodge Magnum. Deputy Rael's affidavit sets out information from several confidential informants (CIs), who stated that within the last 15 to 90 days, Jose Duran had sold heroin to the CIs from the Secret Oasis residence. Deputy Rael drove to the Secret Oasis address where a CI identified the dwelling as Jose Duran's residence. In addition, the search warrant affidavit states

---

[1] The background facts are taken from the Complaint and attachments to the Complaint, including the search warrant, corresponding inventory, and supplemental police report.

that Deputy Rael had conducted surveillance on the Secret Oasis address within 48 hours of October 31, 2012 and that Deputy Rael had observed various vehicles enter and leave the property after very short periods of time, behavior that Deputy Rael found consistent with drug trafficking. On October 31, 2012, a Bernalillo County Metropolitan Court Judge issued the search warrant.

None of Plaintiffs resided at the Secret Oasis address. Ms. Castro and her son Daniel Duran lived at 8301 Tangerine Place NW in Albuquerque, New Mexico (Tangerine Place). Ms. Montaño was a frequent overnight guest at Tangerine Place. No warrant was issued authorizing a search of the Tangerine Place residence.

On about November 8, 2012, Deputy Rael and one or more other deputies Johns Doe stopped Jose Duran, who was driving a Dodge Magnum after he left his mother's residence on Tangerine Place. During the November 8 stop, Jose Duran told the detectives that he no longer was living at the Secret Oasis residence because burglars recently had stolen $20,000 in currency and approximately one pound of heroin from his home on Secret Oasis. Jose Duran informed officers that he was staying at his mother's residence on Tangerine Place because he was worried about his safety. Upon being asked where he had his heroin, Jose Duran stated that he had a scale and about one ounce of heroin in a kitchen drawer in his mother's home on Tangerine Place.

According to the supplemental police report, Jose Duran gave Deputy Rael and the other deputies verbal permission to retrieve the heroin and scale from his mother's home on Tangerine Place. The police report also states that Jose Duran was with the deputies when they arrived at the Tangerine Place residence and when Ms. Castro gave the officers verbal permission to enter the residence. The deputies seized heroin and a scale from the Tangerine Place residence.

Plaintiffs deny having given consent for a search of their home on Tangerine Place and those allegations are accepted as true for purposes of deciding this Motion.

The Secret Oasis address is the only address typed on the top of the "Return of Inventory" form that is page 7 of the 7-page Search Warrant packet. Each page of the 7-page Search Warrant packet has a typewritten address of 10505 Secret Oasis SW. The Return of Inventory, signed by Deputy Rael, refers to the "Search Warrant Inventory" for a list of items seized during execution of the search warrant. The Search Warrant Inventory, dated November 8, 2012 and signed by Deputy Rael, contains two handwritten addresses for the residences on Secret Oasis and Tangerine Place and indicates that heroin and a digital scale with heroin residue were removed from a kitchen drawer. The supplemental police report has a typed cover page showing Jose Duran's name and an address at 8301 Tangerine NW.

Jose Duran was indicted on counts of drug trafficking and possession of drug paraphernalia. On February 12, 2015, Jose Duran moved to suppress the evidence seized during the search of Tangerine Place, and on March 9, 2015, a State Court District Judge granted the motion to suppress. On March 25, 2015, the case against Jose Duran was dismissed.

Plaintiffs claim they were the victims of a warrantless search of the Tangerine Place residence and that Bernalillo County Sheriff's deputies unlawfully seized Plaintiffs during the search. Plaintiffs deny having given the deputies consent to search the residence on November 8, 2012. Plaintiffs allege that Deputy Rael's return of inventory falsely states that Deputy Rael "searched the person or premises described in the Warrant...." The Secret Oasis residence is the only premises identified in the search warrant, but the deputies did not search that residence. Plaintiffs seek an award of damages against Defendants in relation to the search and seizure at Tangerine Place.

4

Defendants argue that three of the five-counts in Plaintiffs' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or on the ground of qualified immunity.

**Legal Standard**

Upon a request to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court tests the legal sufficiency of a party's claim for relief. "[I]f, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face,'" dismissal is proper. *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1181 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations against a defendant "must be enough to raise a right to relief above the speculative level." *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted). Determining whether a complaint states a plausible claim for relief "is context specific, requiring the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64 (citation omitted).

While Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), the federal pleading duty is not trivial. Rule 8 pleading requirements "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 67869. In deciding a Rule 12(b)(6) motion, a court disregards conclusory statements of law and considers if the

remaining factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

**Discussion**

I.     *Conspiracy Claim Against Defendants Rael, John Does, and Houston* (Count III)

The Complaint identifies Count III as a conspiracy claim to violate Plaintiffs civil rights under 42 U.S.C. § 1985. The Count III conspiracy claim appears to invoke 42 U.S.C. § 1985(3), which states in part that "[i]f two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages[.]" 42 U.S.C. § 1985(3). The essential elements of this claim are: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Generally, a conspiracy claim involves an affirmative agreement by words or conduct between two or more persons, who act in concert for an unlawful purpose or by unlawful means. There must be a "meeting of the minds" among the alleged conspirators. *See Wilson v. City of Lafayette*, 2008 WL 4197742, at *11 (D. Colo. Sept. 10, 2008) (discussing § 1983 conspiracy claim) (unpublished) (citations omitted).

Plaintiffs argue that the allegations in the Complaint show that Defendants unlawfully searched the Tangerine Place residence without a warrant, that the warrant to search the Secret Oasis residence did not authorize a search at the Tangerine Place address, that Defendants did not have valid consent for the search at Tangerine Place, that Deputy Rael falsified the return of inventory, and that these actions are evidence of a conspiracy. Response at 7; Complaint ¶¶ 75–

78. Plaintiffs emphasize that these allegations demonstrate all of the elements of a conspiracy because multiple sheriff's deputies could not have "coincidentally, and without prior coordination, just happened to search the same house, on the same criminal investigation, on the same date and time[.]" Response at 8. The Court is not persuaded. "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Tilghman v. Kirby*, 2013 WL 6092529, at *2 (W.D. Okla. Nov. 19, 2013) (unpublished) (citation omitted). Plaintiffs' allegations do not plausibly suggest that Defendants conspired with one another to take a certain course of action to violate Plaintiffs' rights. There are no specific facts showing an agreement and concerted action, or a "meeting of the minds" between alleged conspirators sufficient to sustain a conspiracy claim under § 1985(3).

Moreover, Plaintiffs fail to make any allegations that Defendants were motivated by some racial or otherwise class-based, invidiously discriminatory animus. It is well established that § 1985(3) does not cover all conspiracies. Section 1985(3) affords protection for only those conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 101–02. *See also Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir. 1977) (to state a claim of conspiracy under § 1985(3), "there must be some racial or class based invidiously discriminatory animus behind conspirators' actions, i.e., the conspiracy must aim at a deprivation of the equal enjoyment of rights secured by the law to all"). "[I]n the absence of allegations of class based or racial discriminatory animus, a complaint fails to state a claim of conspiracy under § 1985." *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979). *See Hunt v. Cent. Consol. Sch. Dist.,* 951 F. Supp. 2d 1136, 1177 (D.N.M. 2013) (noting that the "Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus.").

Plaintiffs admit that allegations of a race or class based animus would state a claim under § 1985(3), but they argue that "a plain reading of the statute suggests that liability lies in other ways as well." Response at 8. Plaintiffs provide no explanation what "other ways" might suffice.

The Court is aware that a conspiracy claim often is proven by circumstantial evidence and that many facts that might support a conspiracy claim are not available until a plaintiff conducts some discovery. *See In re Commercial Explosives Litig.*, 945 F. Supp. 1489, 1492 (D. Utah 1996) (discussing Sherman Act conspiracy claim). *See also Wilson*, 2008 WL 4197742, at *10 (cautioning courts to grant some leeway to plaintiffs in describing details of a conspiracy claim). However, Plaintiffs' allegations of conspiracy are conclusory and devoid of specific facts to support the essential elements of a § 1985(3) conspiracy claim. A conspiracy claim under § 1985(3) "cannot stand on 'vague and conclusory allegations' and must be plead with some degree of specificity." *O'Connor v. St. John's College*, 290 F. App'x 137, 141 (10th Cir. Aug. 18, 2008) (unpublished) (citation omitted). *See Wilson*, 2008 WL 4197742, at *9–10 (noting that courts require greater detail in pleading conspiracy claims in order "to move from the purgatory of 'possibility' to the promised land of 'plausibility'").

Plaintiffs' allegations of a conspiracy fail to raise a right to relief above the speculative level and do not plausibly support a claim for relief under 42 U.S.C. § 1985. Therefore, the Court will grant Defendants' Motion and will dismiss the Count III conspiracy claim with prejudice against Defendants Rael, John Does, and Houston. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").

II.      *42 U.S.C. § 1983 Claim Against Defendant Sheriff Houston* (Count IV)

In seeking to hold Sheriff Houston liable for a § 1983 Fourth Amendment violation, Plaintiffs allege that Sheriff Houston was: 1) responsible for supervising the actions of Defendant deputies; 2) had "actual or constructive notice" that the deputies "regularly or routinely unreasonably searched or seized persons or property, without warrant or valid consent[;]" and 3) allowed such searches and seizures to take place with his knowledge and consent. Complaint, ¶¶ 82–84. Alternatively, Plaintiffs contend that Sheriff Houston was deliberately or recklessly indifferent to such searches and seizures, and/or grossly negligent in supervising the deputies under his control. Complaint ¶¶ 85–86. Neither the Count IV allegations nor Plaintiffs' Response clearly identify the theory of liability upon which Plaintiffs rely, for example, supervisory liability or *respondeat superior* liability.

Citing to New Mexico territorial law, Plaintiffs contend that a sheriff confers authority to act on his or her deputies, and that "a sheriff can be held liable for the actions of his deputy undertaken by virtue of the deputy's office, in which the sheriff placed the deputy, or because the deputy acted under color of office …." Response at 5.[2] Plaintiffs argue that Sheriff Houston is responsible for the actions of the deputies, regardless of whether Sheriff Houston personally participated in the alleged search and seizure. *Id.* at 5–6. Although the Complaint does not specify whether Count IV is directed at Sheriff Houston in his individual capacity, official capacity, or both capacities, the Complaint names all individual Defendants in both capacities.

---

[2] Plaintiffs' citations to NMSA 1978 §§ 41-4-5 and 41-4-9 are mistaken. Response at 5. The correct citations are NMSA 1978 §§ 4-41-5 and 4-41-9. These statutory provisions address the authority of sheriffs to appoint deputies and the authority of deputies to discharge their duties which belong to the sheriff. In contrast with Plaintiffs' position, the statutes do not state or even infer that sheriffs are liable for the acts of their deputies. Moreover, the Court is not persuaded by Plaintiffs' reliance on *Karr v. Dow*, 1973-NMCA-016, 84 N.M. 708. Indeed, in *Karr,* the New Mexico Court of Appeals observed that "New Mexico has no statute setting forth the liability of the sheriff for the acts of his deputy." 84 N.M. at 710. In *Karr,* the New Mexico Court of Appeals looked to New Mexico common law for the basis of a sheriff's liability; this Court looks to federal law in analyzing the § 1983 claim against Sheriff Houston.

A.  Section 1983 Personal Participation

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (citation omitted). *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … [a] § 1983 suit[], a plaintiff must plead that each Government-official defendant*, through the official's own individual actions*, has violated the Constitution.") (emphasis added) (citations omitted). Plaintiffs make no allegations from which it might be inferred that Sheriff Houston personally participated in any of the alleged unconstitutional conduct. Indeed, Plaintiffs concede that, "at this time," they "neither believe nor allege that Sheriff Houston took personal part in the unconstitutional search and seizure…." Response at 3 n.2. Thus, to the extent that Plaintiffs seek to hold Sheriff Houston individually liable for his own actions or omissions, that claim is subject to dismissal because there is no allegation of Sheriff Houston's personal participation.

B.  Section 1983 Supervisor Authority

Strict supervisor liability under § 1983 does not exist. *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996) (internal quotations omitted) A government official cannot be held liable based on his title or merely because he is a supervisor. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). "In a § 1983 suit …–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, any strict supervisor authority claim against Sheriff Houston is subject to dismissal.

C.   Supervisory Liability

The possibility remains that Plaintiffs seek to hold Sheriff Houston liable for his deputies'
alleged constitutional violations based on a theory of supervisory liability. When suing an
official under § 1983 based on supervisory responsibilities, "the plaintiff must demonstrate not
only that the subordinate employee violated her rights but that the supervising official 'by virtue
of his own conduct and state of mind did so as well.'" *Schneider v. City of Grand Junction
Police Dep't*, 2012 WL 683516, at *8 (D. Colo. Mar. 2, 2012) (citing *Dodds v. Richardson*, 614
F.3d 1185, 1197–99 (10th Cir. 2010)), *aff'd in part and appeal dismissed in part*, 717 F.3d 760
(10th Cir. 2013).

The *Dodds* Court evaluated the viability of a supervisory liability claim in the wake of
*Iqbal*, observing that in *Iqbal*, the Supreme Court appeared "to have ruled that even deliberate
indifference with actual knowledge [of subordinates' unconstitutional conduct] may not be
sufficient for supervisory liability." *Id.* at 1198 (citation omitted). However, the *Dodds* Court
concluded that a plaintiff could succeed "in a § 1983 suit against a defendant-supervisor by
demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility
for the continued operation of a policy that (2) caused the complained of constitutional harm, and
(3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at
1199–1200 (citations omitted).

Under Count IV of the Complaint, Plaintiffs have alleged Fourth Amendment violations
by deputies under Sheriff Houston's supervision. Complaint, ¶¶ 82–83, 87. Plaintiffs have
identified a practice or custom whereby Sheriff Houston knowingly, or with deliberate
indifference, allowed deputies under his supervision to "regularly" or "routinely" conduct
searches and seizures without a warrant or valid consent. Complaint ¶¶ 82–85. Plaintiffs'

11

allegations are sufficient at this stage of the case to demonstrate an affirmative link between the alleged constitutional deprivations and Sheriff Houston's purported practice of knowingly permitting his subordinates to conduct unreasonable searches and seizures. Moreover, Plaintiffs have established the "state of mind" pleading requirement by alleging that Sheriff Houston knew his deputies were conducting unreasonable searches and seizures, and/or was deliberately or recklessly indifferent to his deputies' unconstitutional actions. Complaint ¶¶ 84–85.

The supervisory liability allegations against Sheriff Houston in his individual capacity are sparse and may not survive a motion for summary judgment. However, the Court concludes at the Rule 12(b)(6) stage that Plaintiffs' Count IV allegations "raise a right to relief above the speculative level" and, therefore, state a claim of supervisory liability against Sheriff Houston under § 1983.

D.  Qualified Immunity

Defendants argue that even if Plaintiffs can state a claim of supervisory liability, Sheriff Houston is entitled to qualified immunity. Thus, the Court examines if Plaintiffs have alleged sufficient facts, taken as true, to show that Sheriff Houston and/or Defendant deputies plausibly violated their constitutional rights, and that those rights were clearly established at the pertinent time. *Robbins v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008).

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. Amend. IV; *Soldal v. Cook County, Ill*., 506 U.S. 56, 62 (1992). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *McInerney v.* King, 791 F.3d 1224, 1231 (10th Cir. 2015) (citation omitted). *See also Coolidge v. New Hampshire*, 403 U.S.

12

443, 474–75 (1971) ("[A] search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show ... the presence of 'exigent circumstances.'").

Plaintiffs allege that Defendant deputies searched their Tangerine Place home without a warrant to support either the search or the seizures. Although Defendants contend that at least one Plaintiff gave consent to search the Tangerine Place residence, Plaintiffs deny having given consent to a search or seizure at their home. Plaintiffs' allegations are taken as true for purposes of deciding a Rule 12(b)(6) Motion. *See Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (the court considers the facts in the light most favorable to the party asserting the injury rather than the party asserting the qualified immunity defense) (citation omitted).

Plaintiffs' allegations under the Fourth Amendment, if true, establish a constitutional violation. Moreover, the law regarding warrantless searches and seizures at a residence was clearly established in 2012. In other words, Plaintiffs have sufficiently alleged a clearly established right to be free from unreasonable searches of their home without a warrant. It would have been "clear to [] reasonable officer[s] that [their] conduct was unlawful" when the deputies searched the Tangerine Place residence without a warrant. *See McInerney*, 791 F.3d at 1237 (inquiry must be undertaken in light of the specific context of the case) (citation omitted). Even if Defendants contended that exigent circumstances existed to excuse the warrantless search and seizures, an argument Defendants have not made,[3] it would have been clear to a reasonable officer that exigent circumstances sufficient to justify a warrantless entry into the Tangerine

---

[3] Defendants set forth general principles as to the qualified immunity defense, but neglect to apply the law to the facts. Motion at 8–9. For example, Defendants do not expressly state that the law prohibiting warrantless searches of a home was not clearly established, nor do they argue that the warrantless search was justified based on exigent circumstances. Moreover, Defendants appear to concede that Plaintiffs have sufficiently alleged a violation of a constitutional right. *See* Motion at 9 ("Regardless of whether the Deputies allegedly violated the constitutional rights of Plaintiffs, the allegations related to Sheriff Houston fail to state a , [sic] and should be dismissed, or he should be afforded qualified immunity."). Defendants never state exactly why Sheriff Houston is entitled to qualified immunity, and the Court has no obligation to divine Defendants' argument.

Place residence were not present. It was clearly established, for example, that exigent circumstances had to involve an urgent law enforcement need. *See id.*

In addition, Plaintiffs have adequately alleged that Sheriff Houston knew his deputies were conducting warrantless searches and seizures in violation of the Fourth Amendment but nevertheless permitted his deputies to engage in unreasonable searches and seizures. It would have been clear to a reasonable sheriff that knowingly allowing subordinate deputies to conduct warrantless searches and seizures under the circumstances would cause Fourth Amendment violations. Stated differently, the theory of supervisory liability as to § 1983 claims was clearly established as of 2012.

The Court concludes that Plaintiffs have alleged sufficient facts to show that Sheriff Houston and/or deputies plausibly violated their constitutional rights and that those rights were clearly established at the pertinent time. Thus, Plaintiffs have nudged the Count IV § 1983 claim against Sheriff Houston in his individual capacity "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 682 (citation omitted). Therefore, the Court will deny Sheriff Houston' request for qualified immunity, and the Count IV § 1983 claim against Sheriff Houston in his individual capacity, premised on supervisory liability, will proceed.

III.   *Official Capacity Claim Against Sheriff Houston and/or Municipal Liability Claim against County of Bernalillo*

A.   Official Capacity Claims Against Sheriff Houston (Counts IV and V)

It is not clear from the allegations if Plaintiffs are asserting the Count IV § 1983 claim against Sheriff Houston in his official capacity. *See* Complaint, Count IV. Nor is it clear from the Count V allegations if Plaintiffs again seek to hold Sheriff Houston liable in his official capacity for § 1983 violations as well as the County of Bernalillo based on municipal liability. In any event, it is obvious that the official capacity § 1983 claims against Sheriff Houston are

14

duplicative and unnecessary. Moreover, it is well established that an official capacity claim against an official is essentially the same as a municipal liability claim against a county entity. *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) ("§1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same") (citation omitted). *See also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity") (citation omitted); *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (same) Thus, the Court will dismiss the § 1983 official capacity claims against Sheriff Houston whether brought under Count IV or Count V.

B.  <u>Municipal Liability Claim Against County of Bernalillo</u> (Count V)

Plaintiffs allege that Defendant Bernalillo County "had a policy of allowing Bernalillo County Sheriff's Deputies to perform unreasonable searches and seizures[,]" and that Bernalillo County "affirmatively promulgated said policy." Complaint, ¶¶ 90–91. Plaintiffs apparently seek to hold liable Defendant County based on a theory of municipal liability.

A municipality or local government entity like a county is a "person" under § 1983 and may be held liable for its constitutional torts. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–92 (1978). However, a county "can be found liable under § 1983 only where the [entity] itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

In order to assert a claim of municipal liability against Bernalillo County related to § 1983 violations, Plaintiffs must allege: "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins*, 81 F.3d at 993–94. *See also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th

15

Cir. 2013) (discussing requirements of an "official policy" and that the entity itself is actually responsible for the injury). If a claim rests on a failure to act by the entity, a plaintiff  must demonstrate the entity's inaction resulted from "deliberate indifference to the rights" of a plaintiff. *Id.* (citation omitted). There must also be allegations and eventually, a showing that the County, through deliberate conduct, was the "moving force" behind the injury alleged. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Defendants argue that even if Plaintiffs can establish a constitutional violation, the violation "obviously was not the result of a policy." Motion at 10. This question is more appropriately addressed after the development of evidence. Although Defendants rely on *Lujan ex rel. Lujan v. Cnty. of Bernalillo*, 354 F. App'x 322, 324–26 (10th Cir. 2009), *Lujan* was decided at the summary judgment stage. In Lujan, the Tenth Circuit Court concluded that the district court was not wrong to have required "some evidence linking the individual defendants to the challenged conduct …." *Id.* at 326.

In support of the municipal liability claim, Plaintiffs have alleged Fourth Amendment violations. Complaint, Counts I and II. *See* Motion at 10 (Defendants concede that Plaintiffs have alleged constitutional violations). Plaintiffs also have alleged the existence of a policy or practice that purportedly was a direct cause of the constitutional violations. Complaint, ¶ 90. In addition, Plaintiffs' municipal liability claim could be read to allege that Sheriff Houston's failure to supervise or his deliberate indifference to his subordinate deputies' unreasonable conduct caused Plaintiff's injuries. Complaint, ¶¶ 84–86. *See, e.g., Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010) ("…municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results

from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).

Plaintiffs' claim of municipal liability against Bernalillo County does not appear strong, and it remains to be seen if the evidence will support the claim. While Plaintiffs allege the existence of "regular or routine" instances of unlawful searches and seizures, those allegations lack any specific factual content. In addition, Plaintiffs allege only a single instance of an unlawful search (and related unlawful seizures). Generally, proof of a single incident of unconstitutional activity is not sufficient to impose municipal liability." *Jenkins*, 81 F.3d at 994 (citation omitted). But, allegations of a single incident of unconstitutional activity might be sufficient to impose municipal liability where there is proof that the unlawful conduct was "caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *See Butler v. City of Norman*, 992 F.2d 1053, 1055–56 (10th Cir. 1993) (citation omitted).

The Court concludes that at the Rule 12(b)(6) stage, Plaintiffs' allegations of municipal liability state a plausible claim of relief against Defendant County of Bernalillo. Therefore, the Court will deny Defendants' Motion to Dismiss as to the municipal liability claim.

### Conclusion

Plaintiffs' unchallenged Count I and Count II § 1983 claims will proceed. In addition, the Count IV § 1983 claim against Sheriff Houston in his individual capacity, as premised on supervisory liability, and the Count V § 1983 municipal liability claim against the County of Bernalillo will both proceed.

The Court will dismiss the Count III § 1985 Conspiracy Claim with prejudice, will dismiss the Count IV individual capacity § 1983 claims against Sheriff Houston as premised on

strict supervisor authority or personal participation, to the extent those claims are alleged, and will dismiss the Count IV and Count V § 1983 official capacity claims against Sheriff Houston.

IT IS THEREFORE ORDERED that DEFENDANTS' MOTION TO DISMISS COUNTS III, IV AND V OF PLAINTIFF'S "COMPLAINT FOR VIOLATION OF CIVIL RIGHTS" AND FOR QUALIFIED IMMUNITY AND MEMORANDUM IN SUPPORT THEREOF (Doc. No. 6) is GRANTED in part and DENIED in part, with the following results:

1) The 42 U.S.C. § 1985(3) Conspiracy Claim to Violate Civil Rights (Count III) is dismissed with prejudice against Defendants Rael and Johns Doe, whether sued in their individual or official capacities;

2) The 42 U.S.C. § 1983 Violation of Civil Rights Claim (Count IV), as premised on personal participation or strict supervisor authority against Defendant Houston in his individual capacity, is dismissed with prejudice;

3) The 42 U.S.C. § 1983 Violation of Civil Rights Claim (Count IV) is dismissed against Defendant Houston in his official capacity; and

4) The 42 U.S.C. § 1983 Violation of Civil Rights Claim (Count V) is dismissed against Defendant Houston in his official capacity.

_____
SENIOR UNITED STATES DISTRICT JUDGE